IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TROY LAMONT MOORE, SR. | : | CIVIL ACTION |
| V. | : | NO. 14-3873 |
| MARGARET McGROGAN, RN, et al. | : | |

PROPOSED STATEMENT OF UNCONTESTED FACTS OF DEFENDANT, MARGARET MCGROGAN, R.N., IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

Margaret McGrogan, R.N., ("McGrogan") by and through her attorneys, Gold & Ferrante, P.C., hereby submit the within Statement of Uncontested Facts in support of her Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 in this matter and state as follows:

I. PROCEDURAL HISTORY

1. On June 23, 2014, Troy Lamont Moore, Sr. ("Moore") filed an application with the United States District Court for the Eastern District of Pennsylvania to proceed in forma pauperis. (Document 1).

2. On June 26, 2014, this Court issued an order permitting him leave to proceed in forma pauperis (Document 2)

3. On June 26, 2014, Moore filed a complaint against McGrogan and other defendants. (Document 1). A true and correct copy of the complaint is attached as Exhibit "A".

4. On or about November 4, 2014, McGrogan filed a motion to dismiss the complaint with a supporting brief. (Document 11).

5. On December 3, 2014, this Court issued an order granting the defendants leave to take the deposition of Moore. (Document 14).

6. On December 3, 2014, this Court issued a first scheduling order, directing that any motion for summary judgment be filed by March 4, 2015. The order also directed that a conference be held approximately 30 days thereafter for Moore to identify any discovery needed to respond to the motions. (Document 16).

1

7. This Court as part of its scheduling order of December 3, 2014 dismissed without prejudice the motion to dismiss of McGrogan.

8. On December 12, 2014, McGrogan filed an answer and affirmative defenses to the complaint of the plaintiff. (Document 18).

II. BRIEF STATEMENT OF ALLEGED FACTS

9. Moore alleges that while he was in the Philadelphia Prison system he suffered an injury, which was not treated appropriately. Exhibit "A", pp. 2-3.

10. Moore alleges that on September 16, 2013, at approximately 11:15 pm, the toilet in his cell overflowed throughout the night with feces and urine. Exhibit "A", p. 3.

11. He alleges that this caused him to have shortness of breath, chest pain and vomiting and because he was sick he asked Officer Walden if he could be removed from the cell and sent for medical attention. These requests were refused. Exhibit "A", p. 3.

12. He remained in the cell for over 8 hours breathing in raw sewage before he was permitted to go to the medical department, where McGrogan treated him. Exhibit "A", p. 3.

13. He alleges that in the medical department he complained of chest pain. Exhibit "A", p. 3.

14. Moore believes that McGrogan acted with deliberate indifference by not providing him additional medical care.

15. Moore filed one grievance while at Philadelphia Industrial Correctional Center ("PICC"). A copy of his grievance file is attached as Exhibit "B".

16. On October 20, 2013, Moore filed Grievance #G132571. A copy of this grievance is attached and marked Exhibit "B", p. 6.

17. Grievance #G132571 states that no action was taken on his previous grievances concerning the fact he did not get medication, that he felt his grievance was not adequately addressed, and he wanted a board review. Exhibit "B", p. 6.

18. He was upset about an incident that occurred on September 16, 2013, when his

toilet exploded. The grievance review found that he was seen in the medical department on September 16, 2013 and September 18, 2013. His vital signs were taken. His medical concerns were properly addressed. It was also noted that Moore was discharged on November 14, 2013. No further action was required. Exhibit "B", p. 7.

19. The grievance system of the Philadelphia Prison System provided for appeals from the denial of a grievance. An examination of Moore's grievance file shows that he never appealed. See Exhibit "B".

20. Moore attached a grievance form to his complaint dated September 17, 2013. A true and correct copy of this grievance is attached as Exhibit "C".

21. Exhibit "C" is not an official grievance accepted and recorded by the prison. Exhibit "B", p. 1. It fails to meet the requirements for submission of a grievance.

    III.    MEDICAL RECORDS

        A.    PICC

22. Moore was admitted into the Philadelphia Prison System in July 2013. Moore's pertinent medical records are attached and marked Exhibit "D".

23. On September 16, 2013, Moore was seen in the medical department of the Philadelphia Prison System by McGrogan. McGrogan's note indicates that Moore was sent to the medical department because of a history of shortness of breath and diarrhea. He stated that he had been exposed to raw sewage because his toilet overflowed during the night. Moore's vital signs were taken; his blood pressure was 110/80, his respiratory rate 16 and his pulse rate 76. Moore's blood oxygenation was taken. It was 97% on room air. These findings are all within normal range. It is recorded that Moore had no shortness of breath. Moore was given medication for his diarrhea. Exhibit "D", p. 1.

24. On September 18, 2013, Moore returned to the medical department of the Philadelphia Prison System. He complained of an upset stomach. He ambulated without difficulty and had no shortness of breath. His vital signs were again taken. They were all

normal. His abdomen was soft. Bowel sounds were present. The patient was educated about his condition and given Pepto-Bismol. Exhibit "D", pp. 1 and 7.

25. On September 20, 2013, McGrogan saw him. He complained that his feet were irritated. He had some scaling on his feet. This was treated Exhibit "D", p. 4.

26. On September 23, 2013, Kim Adams, CRNP ("CRNP Adams") examined him for dry feet. No open areas and no drainage appeared. CRNP Adams prescribed an anti-fungal cream. Exhibit "D", pp. 2 and 7.

27. On October 11, 2013, McGrogan treated Moore for complaints of headaches. Exhibit "D", p. 5.

28. On October 23, 2013, he was seen because of complaints of acid reflux. He was given medication to treat this condition. Exhibit "D", pp. 2 and 8.

29. On November 6, 2013, he was seen because of complaints of headaches. He was treated with Amoxicillin and Motrin to help his condition. Exhibit "D", pp. 6, 8 and 9.

30. On November 14, 2013, the Philadelphia Prison System discharged Moore. Exhibit "D", p. 3.

### B. DEPARTMENT OF CORRECTIONS

31. Moore was admitted into SCI-Graterford on November 14, 2013. Moore's pertinent medical records are attached as Exhibit "E", p. 91.

32. Moore did not have any medical problems relating to his care and treatment of any injuries allegedly sustained on September 16, 2013. Exhibit "E", pp. 140-152.

### V. DEPOSITION OF TROY MOORE

33. The deposition of Troy Lamont Moore was conducted on January 16, 2015. A true and correct copy of his deposition transcript is attached as Exhibit "F".

34. He was incarcerated at PICC Prison in Philadelphia from July 2013 to November 2013. Exhibit "F", p.8, lines 8-24, p. 9, lines 1-4.

35. The problem set forth in the complaint takes place on September 16, 2013 at

approximately 23:15 hours. He was sitting on his footlocker and the toilet in his cell exploded (overflowed) covering him in raw sewage. Exhibit "F", p.15, lines 4-24, p.16, lines 1-8.

36. His cell mate was Gabriel Bassamy ("Bassamy"). Exhibit "F", p.17, lines 2-8.

37. The toilet was working fine all day. Exhibit "F", p.18, lines 1.

38. He has no idea why the toilet exploded. Exhibit "F", p. 18, lines 9-17.

39. He told Correctional Officer Walden what happened. Officer Walden posted an inmate/block worker outside his cell door to mop up the raw sewage so it would not go across the tier into other cells. Exhibit "F", p.19, lines 3-12, p. 20, lines 13-23.

40. He told Officer Walden around 11:30pm that he needed medical attention. But she ignored him. Exhibit "F", p. 21, lines 6-11, 20-24.

41. He started having shortness of breath and chest pain right after the toilet first overflowed. Exhibit "F", p. 24, lines 2-13.

42. During the night, the toilet would overflow every 10 minutes for 15 to 20 seconds and then stop.. Exhibit "F", p. 45, lines 1-9.

43. After the toilet exploded he washed his hands and face. Exhibit "F", p. 45, lines 14-19.

44. The first bunk bed is about a foot and a half off the floor. Someone sitting on the bed would not be in the raw sewage. Exhibit "F", p. 47, lines 5-12.

45. Between September 16, 2013 at 11:15pm to September 17, 2013 at 7:30am, he tried to get Officer Walden attention by banging on the door for 45 minutes. Then his cell mate Bassamy took over. Exhibit "F", p. 48, lines 12-24, p. 49, lines 1-7.

46. That morning he was allowed to clean his cell. His cell mate was not there because he had to go to a scheduled appointment. Exhibit "F", p. 56, lines 11-24, p. 57, lines 1-7.

47. He was allowed to go down to the medical department around 9:00am on the 17th. Exhibit "F", p. 50, lines 11-13.

48. He had a shower before going to the medical department. He was able to clean

up. Exhibit "F", p. 50, lines 14-18.

49. He was able to walk down to the medical department on his own without any problems. Exhibit "F", p. 50, lines 21-24, p. 51, lines 1-9.

50. When he got to medical, a finger monitor was placed on his finger. Exhibit "F", p. 52, lines 8-10.

51. Moore cannot explain how he could have a normal pulse and oxygen rate and have chest pain at the same time. Exhibit "F", p. 54, lines 17-20.

52. He was not vomiting or having diarrhea in the medical department. Exhibit "F", p. 55, lines 1-5.

53. He did not have a rash in the medical department. Exhibit "F", p. 54, lines 10-13.

54. Moore believes he did have a headache. Exhibit "F", p. 55, lines 6-13.

55. His shortness of breath and chest pain subsided that afternoon, September 17, 2013. Exhibit "F", p. 58, lines 17-22, p. 59, line 1.

56. The next time he had any medical treatment was the following day, but he does not know which doctor that treated him. Exhibit "F", p. 56, lines 2-10.

57. He does not remember having his vital signs taken the following day. He was now complaining that he had an upset stomach. Exhibit "F", p. 57, lines 8-17.

58. On September 18, 2013, he did not complain of shortness of breath. Exhibit "F", p. 57, lines 18-24, p. 58, lines 1-5.

59. He was also seen for athletes foot and received an antifungal cream. He had headaches and was given Motrin and antacids for his stomach complaints. Exhibit "F", p. 59, lines 2-11.

60. He was discharged from the prison on November 13, 2013. Exhibit "F", p.59, lines 12-18.

61. McGrogan did not think he needed medical care and he thinks he did. Exhibit "F", p.60, lines 2-5.

62. Moore wanted to have medication for his shortness of breath and chest pain. Exhibit "F", p. 60, lines 20-24, p. 61, line 1.

### VI. VERIFICATION OF MARGARET McGROGAN, RN

63. The verification of McGrogan appears hereto as Exhibit "G".

64. McGrogan is a defendant in the above-captioned matter and if called to testify in the trial of this matter she would do so under the oath stated in her verification. Exhibit "G", paragraph 1.

65. McGrogan is licensed to practice medicine in the Commonwealth of Pennsylvania and at all times relevant to this matter was employed as a nurse for Corizon Health Services at the Philadelphia Prison Campus. Exhibit "G", paragraph 2.

66. McGrogan has knowledge and information concerning the medical care provided to Moore, particularly for the few months he spent in the Philadelphia Prison System. Exhibit "G", paragraph 3.

67. At all times McGrogan treated Moore believing that the care she was rendering was appropriate and geared to correctly diagnosing and treating his complaints. Exhibit "G", paragraph 4.

68. According to McGrogan, Moore was admitted into the Philadelphia Prison System in July 2013. Exhibit "G", paragraph 5.

69. On September 17, 2013, McGrogan saw Moore in the medical department. She noted that Moore was sent to the medical department because of a history of shortness of breath and diarrhea. Moore stated that he had been exposed to raw sewage because his toilet overflowed during the night. Moore's vital signs were taken; his blood pressure was 110/80, his respiratory rate 16 and his pulse rate 76. Moore's blood oxygenation was also taken. It was 97% on room air. These findings are all within normal range. McGrogan asked Moore if he had shortness of breath. Moore indicated to McGrogan that he had no shortness of breath. McGrogan gave Moore medication for his complaint of diarrhea. There was absolutely no reason

to keep Moore in the medical department. In addition, there was no reason to provide him with any other medication in light of his examination, medical findings and clinical presentation. Exhibit "G", paragraph 6.

70. On September 18, 2013, Moore returned to the medical department and was seen by another medical provider because his stomach was upset. The medical notes indicate that Moore was ambulating without difficulty and had no shortness of breath. His vital signs were again taken. They were all normal. His abdomen was soft and bowel sounds were present. The patient was educated about his condition and given Pepto-Bismol. Exhibit "G", paragraph 7.

71. McGrogan next saw Moore on September 20, 2013, for complaints that his feet were irritated. She noticed some scaling and gave Moore medication for his feet. Exhibit "G", paragraph 8.

72. On September 23, 2013, Moore was seen by Kim Adams, CRNP ("CRNP Adams") for complaints that his feet were dry. CRNP Adams prescribed an anti-fungal cream. Exhibit "G", paragraph 9.

73. McGrogan did not see Moore again until October 11, 2013. She treated him for headaches. Exhibit "G", paragraph 10.

74. On October 23, 2013, Moore was seen because of complaints of acid reflux. He was given medication to treat this condition. Exhibit "G", paragraph 11.

75. On November 6, 2013, Moore was seen because of complaints of headaches. He was treated with Amoxicillin and Motrin to help his condition. Exhibit "G", paragraph 12.

76. On November 14, 2013, Moore was discharged from the Philadelphia Prison System. Exhibit "G", paragraph 13.

77. At all times, McGrogan used her best medical judgment when determining what treatment Moore should receive for any of his presenting complaints. Exhibit "G", paragraph 14.

78. In McGrogan's professional medical opinion, everything was done appropriately

to diagnose and treat Moore's medical complaints. Exhibit "G", paragraph 15.

79. In McGrogan's professional medical opinion, the care and treatment rendered has been reasonable and within the standard of care. Exhibit "G", paragraph 16.

80. At no time did McGrogan act with deliberate indifference when caring for and treating Moore. Exhibit "G", paragraph 17.

81. At no time did McGrogan believe that her conduct presented a substantial risk of harm to Moore. Exhibit "G", paragraph 18.

                              GOLD & FERRANTE, P.C.

                        BY:       /S/ ALAN S. GOLD
                              ALAN S. GOLD
                              Attorney for Defendant,
                              Margaret McGrogan, RN

## CERTIFICATE OF SERVICE

      I hereby certify that I have sent a true and correct copy of defendant, Margaret McGrogan, RN's Proposed Statement of Uncontested Facts in support of her Motion for Summary Judgment via US First Class Regular Mail and ECF Filing, as noted below, on this date to the following individuals:

Troy Lamont Moore, Sr., FE-2483
SCI-Forest
PO Box 945
Marienville, PA 16239-0945
via US First Class Regular Mail

Aaron Shotland
via ECF Filing:  aaron.shotland@phila.gov

                                              /s/ ALAN S. GOLD
                                              ALAN S. GOLD

Dated:        March 13, 2015