IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TROY LAMONT MOORE,                    :

        Plaintiff              :          CIVIL ACTION

   v.                                :          No. 14-3873

LOUIS GIORLA, et al.,

        Defendants             (HONORABLE EDUARDO C. ROBRENO)

FILED
SEP 1 1 2017
KATE BARKMAN, Clerk
By_____ Dep. Clerk

RECEIVED
SEP 1 1 2017

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS
MOTION FOR SUMMARY JUDGMENT

AND

INCORPORATED MEMORANDUM OF LAW

     Plaintiff, Troy Lamont Moore, Sr., in pro se, hereby files this response in opposition to Defendant's motion for summary judgment which was filed on August 22, 2017, pursuant to Fed.R.Civ.P., Rule 56(b), and Local Rule 7.1(c).

### A. Counter Statement of Factual and Peocedural History

     Plaintiff, Troy Lamont Moore, Sr., (hereinafter "Moore"), commenced this civil rights action on June 26, 2014, in pro se, pursuant to 42 U.S.C. §1983. Moore factually alleged that while confined at the Philadelphia Industrial Correctional Center ("PICC")--prison officials were deliberately indifferent in depriving him of basic sanitary and safe conditions by exposing him to "human waste" and "raw sewage" for more than eight hours when the toilet in his 8 x 12 foot cell violently overflowed spraying "human waste" and "raw sewage" on him and his entire cell. Moore alleged that Defendant Saajida Walton ("Walton") who disregarded Moore's repeated pleas for assistance to remove him from the unsanitary and unsafe conditions deprived him of basic human necessities in violation of the Eighth Amendment.

     While ignoring Moore's repeated pleas for assistance, it is undisputed

that Walton opened the cell door next to Moore's cell, whose occupants were also sprayed with "human waste" and "raw sewage water", to allow those prisoners to shower, change clothing and bedding, and to clean the sewage water from their cell. Moore pleaded with Walton for eight hours for assistance, but she would walk past his cell every hour and ignore his pleas for medical assistance and to be removed from the unsanitary and unsafe conditions that existed in his 8 x 12 foot cell which was covered with "human waste" and "raw sewage."

Moore and his cell was covered in "human waste" and "raw sewage," he was experiencing adverse medical symptoms, Walton knew of the substantial risk from the very fact that the risk was obvious--exposure to "human waste" and "raw sewage" for eight hours subjected Moore to conditions which clearly posed an unreasonable risk of serious harm to his present and future health or safety. Moore's toilet would violently "overflow" every 20 minutes spraying him and his cell with "human waste" and "raw sewage" lasting for eight hours. Moore experienced shortness of breath, chest pains, vomiting, and exposure to potentially infectious diseases, such as, Aids, Hepatitis, and Tuberculosis, by being subjected for an extended period of time to "human waste" and "raw sewage." Moreover, Moore experienced "psychological problems," he had anxiety, obsessionally fixated thinking on one thing, i.e., contacting an infectious disease from exposure to "human waste" and "raw sewage" for an extended period of time, and inability to sleep.

Sheer common sense should have alerted Walton to the substantial risk to Moore's safety and future health by his exposure to "human waste" and "raw sewage." Yet, Walton incredibly ignored Moore's pleas for assistance, by doing so, she violated Moore's right to safe and healthy conditions of confinement in violation of the Eighth Amendment. (See Troy L. Moore's

2

Declar., appended as Exhibit A).[1]

Defendant Walton did not append a declaration to dispute Moore's factual narrative of the facts. Instead, defendants rely entirely on "procedural grounds" or endeavoring to minimize the seriousness of Walton's "deliberate indifference" to the substantial risk to Moore's safety and health by exposing him for an extended period of time to "human waste" and "raw sewage." As will be fully addressed below, Walton's reliance on procedural grounds is misplaced and the failure of Defendant Walton to append her sworn declaration in support of summary judgment in itself creates a "genuine dispute" of a material fact preventing the grant of summary judgment in defendants favor.

B.  STATUTE OF LIMITATIONS DEFENSE

Defendant at page 5 of the brief filed in support of summary judgment makes a recycled argument that is essentially the same unpersuasive argument made in support of defendant's May 19, 2017, motion to dismiss under Rule 12(b)(6) which was soundly rejected by this court on its merits at the July 24, 2017, telephone conference conducted in this case. The defendant's argument that Moore's suit is barred by Pennsylvania's two-year statue of limitations is meritless. However, Moore will demonstrate here why defendant's reliance on a "statute of limitations" defense is seriously flawed as a matter of law.

The geniuses for Defendant Walton's "statute of limitations" defense is entirely predicated on Moore filing an amended complaint on February 18, 2015, to correct the spelling of Defendant Saajida Walton's name. In his

---

1.  Moore has also appended the declarations of Rodney Johnson as Exhibit B and Larry Rodriquez as Exhibit C. These prisoners, Johnson and Rodriquez, were confined in adjacent cells at PICC at the time of this incident and witnessed Defendant Walton walk past Moore's cell on numerous occasions and ignore his pleas for medical assistance and to be allowed to shower and change his "human waste" and "raw sewage" soaked clothing and bedding.

amended complaint, Moore only amended the spelling of "Officer Walden's" name, who was the same defendant named in the original complaint, i.e., "Saajida Walton" with the spelling correction. Defendant's argument here is seriously flawed for the simple reason that "Walton" is not a new defendant which this court determined in denying defendant's motion to dismiss under Rule 12(b)(6).

Under Fed.R.Civ.P. 15(c)(3)--an amendment to a pleading dates back to the date of the original pleading when the amendment consists only of a spelling change to a defendant's name if, within the period allowed for service of process.  The party brought in by amendment (a) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. The requirements of Rule 15(c)(3) are satisfied in this case because Defendant Walton was served with a copy of the amended complaint on May 2, 2017--prior to Walton's May 19, 2017, motion to dismiss under Rule 12(b)(6)--and Walton did not then or now-- argue any prejudice to her defense by Moore's amendment.

A perusal of Moore's amended complaint will demonstrate he only corrected the spelling of Defendant Walton's name which clearly satisfies Rule 15(c(3)--"relation back" to the original complaint provision.

The defendant's reliance on Pennsylvania law at page 5 of the brief is unpersuasive because it clearly prohibits a Plaintiff from adding a "new defendant" after the statute of limitations has expired. Here, however, Moore's amendment was to correct the spelling of Defendant Saajida Walton's name, she is not a "new defendant" but is the same defendant named in the original complaint filed in this case.

4

### C. Moore has Factually Alleged a valid Eighth Amendment Violation

At page 8 of the brief in support of summary judgment, Walton argues that she was not "deliberately indifferent" to a serious deprivation that amounted to a Eighth Amendment violation. Citing <u>Mitchell v. Horn</u>, No. CV-98-4742-2005 WL 1060658, at 3 (E.D.Pa. 2005); <u>Harris v. Fleming</u>, 839 F.2d 1232, 1235 (7th Cir. 1988); and <u>Stone-El v. Sheehan</u>, 914 F.Supp. 202, 206 (N.D. Ill. 1995). Defendant Walton's reliance on these cases is misplaced for the very reason those cases did not involve a prison officials "deliberate indifference" in exposing a prisoner to "human waste" and "raw sewage." Defendant Walton citing the above cases is apparently equating being soaked in "human waste" and "raw sewage" as the same as being denied a tooth brush or shower. However, caselaw in this area has made a clear distention in this area.

In <u>Mutschler v. Tritt</u>, 2016 U.S.Dist. Lexis 28026 (W.D.Pa. 2016), at p. 5-6, a case involving prison officials requiring <u>Mutschler</u> to wear soiled diapers, the court noted that the Eleventh Circuit Court of Appeals recently surveyed the caselaw in this field, noting that every sister circuit (except the Federal Circuit) has recognized that the deprivation of basic sanitary conditions, even for a short period of time, can constitute an Eighth Amendment violation. See e.g., <u>Brooks v. Power</u>, 800 F.3d 1295, 1303 (8th Cir. 2015); <u>Budd v. Motley</u>, 711 F.3d 840, 843 (7th Cir. 2013)(per curiam) ("[A]llegations of unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief."); <u>DeSpain v. Uphoff</u>, 264 F.3d 965, 974 (10th Cir. 2001)("Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in

5

Farmer and the more general standards of dignity embodied in the Eighth
Amendment."); Young v. Quinlan, 960 F.2d 351, 365 (3rd Cir. 1992)("It would
be an abomination of the Constitution to force a prisoner to live in his own
excrement for four days..."), superseded by statute on other grounds as
recognized by Nyhuis v. Reno, 204 F.3d 65, 71 n. 7 (3rd Cir. 2000); Howard v.
Adkison, 887 F.2d 134, 137 (8th Cir. 1989)(noting that "inmates are entitled
to reasonably adequate sanitation" and finding Eighth Amendment violation
where cell was "covered with...human waste"); Inmates of Occoquan v. Barry,
844 F.2d 828, 836 (D.C. Cir. 1988)(recognizing "sanitation" as a "basic need"
for prisoners protected by the Eighth Amendments); Parrish v. Johnson, 800
F.2d 600, 609 (6th Cir. 1986)("[T]he Eighth Amendment protects prisoners from
being...denied the basic elements of hygiene."); Green v. McKaskle, 788 F.2d
1116, 1126 (5th Cir. 1986)("[A] state must furnish its prisoners with
reasonably adequate...sanitation...to satisfy [the Eighth Amendment's]
requirements"); Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir.
1985)("noting that failure to provide "minimally sanitary" conditions
"amounts to a violation of the Eighth Amendment"); LaReau v. MacDougall, 473
F.2d 974, 978 (2nd Cir. 1972)("Causing a man to live, eat and perhaps sleep
in close confines with his own human waste is too debasing and degrading to
be permitted"); and Brooks v. Powell, 473 F.3d 1295, 1304 (11th Cir. 2015).

Given the extensive caselaw cited above, the sworn deposition Moore
gave on January 16, 2015,[2] factually alleged uncontraverted facts sufficient
to allow any reasonable jury to find Defendant Walton was "deliberately
indifferent" here in ignoring Moore's pleas for medical assistance and
leaving him in a cell for eight hours when he was soaked with "human waste"
and "raw sewage."

---

2.  In support of summary judgment, Defendant Walton appended to her brief as
Exhibit 1--"Troy Lamont Moore's" January 16, 2015, 65 page sworn deposition.

Indeed, in his January 16, 2015, sworn deposition by Walton's counsel, Moore testified that on September 16, 2013, while confined to a 8 x 12 foot cell at PICC, the toilet in his cell exploded--covering him in raw sewage. Id. Moore said he tried to get to the sink to wash "raw sewage" out of his eyes and mouth. Id. The "sewage" burst out of the toilet so violently-- "human waste" was four feet high on the cell walls. Id. (See "Troy Lamont Moore's Deposition, 1/16/15, at pps. 15-18, Appended to Def's Br. as Exhibit 1). Moore testified his toilet would violently overflow every 20 minutes throughout the night. Id. He suffered from coronary artery disease since 1998, and he was diagnosed by the Veterans Administration in 2012 with PTSD. Id. Moore testified he called for help because he was having shortness of breath, chest pains, and was vomiting in his cell. Id. The vomiting lasted for four days. Id. Moore said he banged on the door pleading for help, but Officer "Walden"[3], who was the block officer on duty, walked past his cell door and acted like she couldn't hear him. Id. (See "Moore's" Deposition, 1/16/15, pps. 15-19, Appended to Def's Br. as Exhibit 1).

Moore testified that Officer "Walden" was fully aware of his deplorable and unsanitary conditions because she opened the inmate block worker's cell door and posted him outside Moore's cell door throughout the night in an attempt to keep the "human waste" and "raw sewage" from spreading into other cells and the unit. Officer "Walden" also opened the cell door next to Moore's cell to allow the two prisoners in the cell to evacuate the cell which was also being flooded with "human waste" and "raw sewage." (See "Moore's" Deposition, 1/16/15, at p. 20, Appended to Def's Br. as Exhibit 1).

---

3. Throughout Moore's January 16, 2015, sworn deposition, Defendant Saajida Walton is referred to as "Walden." Moore subsequently filed an amended complaint to correct the misspelling of Walton's name.

Moore **testified** he immediately sought medical attention the morning of September 17, 2013, he went to medical complaining of shortness of breath, **throwing** up, **diarrhea**, chest pains, and a rash from his scalp all **the way** down his body to his feet. Moore sent numerous sick call slips and was **treated** at a mini **triage** for fungus on his feet, **patches** of rashes over his body, stomach problems, **violent vomiting**, and severe headaches **that lasted** for several weeks. Id. (See "Moore's" Deposition, at pps. 21-28, Appended **to** Def's Br. as Exhibit 1).

Moore **testified that** two weeks after the incident, he was escorted **to** Major Martin's office pertaining to this incident. He specifically informed Major Martin **that** Officer "Walden" ignored his pleas for medical help and **to** be removed from his cell which was covered in "human waste" and "raw sewage." Major Martin **then** ordered **the** guard who escorted Moore to her office **to** "remove the surveillance tape and preserve **it**." Moore **testified** Major Martin indicated she would **investigate** Officer "Walden's" conduct. Id. (See "Moore's Deposition, 1/16/15, at pps. 36-38, Appended **to** Def's Br. as Exhibit 1).

**Eighth Amendment's Condition of Confinement Standard**

Defendant Walton fails to recognize that in cases where inmates allege **that** prison conditions cause unnecessary suffering, **the** appropriate subjective inquiry is whether officials acted with "deliberate indifference" **to** inmates health and safety. See <u>Hudson v. McMillian</u>, 503 U.S. 4, 5 (1991). On **the** other hand, where inmates allege that excessive force has been used, **the inquiry is** "whether force was applied in good faith effort **to** maintain order **or** restore discipline or maliciously and sadistically for **the** very purpose of causing harm. See <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1996). Only **in** use of force cases does the court ask whether the deprivation suffered by **the** prisoner was sufficiently serious. Id. See <u>Wilson v. Seiter</u>,

501 U.S. 294, 298 (1991). Thus, contrary to Walton's belief, in condition-of-confinement cases, the prisoner need not demonstrate a "significant injury." Id. Hudson, 503 U.S. at 9. Also see Atkinson v. Taylor, 316 F.3d 257, 272 (3rd Cir. 2003).

In order to succeed on an Eighth Amendment condition of confinement claim, a plaintiff must demonstrate both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while defendants had a "sufficiently culpable state of mind." See Farmer v. Brennan, 511 U.S. 825, 834 (1994). With respect to the first inquiry, conditions cited by an inmate must be "objectively sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Id. There is not a static test for determining whether conditions are "cruel and unusual." Instead, the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." Id. Rhodes v. Chapman, 452 U.S. 337, 346 (1981). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." Id. Helling v. McKinney, 509 U.S. 25, 36 (1993); See also Farmer, 511 U.S. at 833-34.

It is well established that the Eighth Amendment protects an inmates' physical health. As the Court of Appeals for the Third Circuit stated in Young v. Quinlan, 690 F.2d 351, 364 (3rd Cir. 1992):

> The touchstone is the health of the inmate. While the prison
> administration may punish, it may not do so in a manner that
> threatens the physical and mental health of prisoners. Id.

With respect to the second element, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer, 511 U.S. at 833; Rhodes, 452 U.S. at 347. This requires a court to determine, subjectively, whether the officials acted with sufficiently

9

culpable state of mind. Id.

> [A] prison official cannot be found liable under the Eighth
> Amendment for denying an inmate humane conditions of
> confinement unless the official knows of and disregards an
> excessive risk to inmate health or safety; the official must
> both be aware of facts from which the inference could be drawn
> that a substantial risk of serious harm exists, and he must
> also draw the inference...The Eighth Amendment does not outlaw
> cruel and unusual "conditions"; it outlaws cruel and unusual
> "punishments." Id. Farmer, 511 U.S. at 838.

Thus, a prison official may be held liable under the Eighth Amendment
for denying humane conditions of confinement only if he knows that inmates
face a substantial risk of serious harm and disregards that risk by failing to
take reasonable measures to abate it. A tier of fact may infer the existence
of this subjective state of mind from the fact that the risk of harm is
obvious. Id. Farmer, 511 U.S. at 842.

With the above standard in mind, Moore claims that as a result of his
exposure to "human waste" and "raw sewage" for a prolonged period of time
subjected him to a "substantial risk of serious harm" in violation of the
Eighth Amendment.

**Moore Was Subjected to a Sufficiently Serious Condition**

Moore has more than adequately met the "subjective" inquiry, i.e.,
whether Walton acted with deliberate indifference to his health or safety.
Hudson, 503 U.S. at 5. Walton's wrongdoing here was objectively 'harmful
enough' to establish a constitutional violation. Hudson, 503 U.S. at 8. Walton
knew Moore faced a substantial risk of serious harm to his health by being
exposed to "human waste" and "raw sewage" but she failed to take reasonable
measures to abate it. The facts here are undisputed, Moore's toilet violently
exploded spraying him and covering his cell with "human waste" and "raw
sewage." Moore had "human waste" and "raw sewage" in his mouth and eyes, he
was literally soaked in it, he was violently vomiting, he had shortness of

breath and chest pains, but Walton would walk by his cell on a number of occasions over an eight hour period ignoring his pleas for medical assistance.

In seeking summary judgment here, its interesting to note that Walton has not offered a sworn declaration proffering a reasonable justification for ignoring Moore's pleas for assistance over an eight hour period. The exposure to "human waste" and "raw sewage" created a substantial risk of harm not only to Moore's safety and health, but it also exposed him to potentially "infectious diseases" that could possibly affect his future health and safety. In Helling v. McKinney, supra, the Court held that the Eighth Amendment prohibits prison officials from exhibiting "deliberate indifference" to the future health problems that an inmate may suffer as a result of current prison conditions, even if the inmate "shows no serious current symptoms." Id. 509 U.S. at 33. The Court explained that a plaintiff "states a cause of action under the Eighth Amendment by alleging that [defendants] have, with deliberate indifference, exposed him to "environmental tobacco smoke" that poses an unreasonable risk of serious damage to his future health." Id. 509 U.S. at 35.

Moore has met the "objective" component of the Eighth Amendment to permit a fact finder to conclude that the wrongdoing here was 'objectively' harmful enough to create a substantial risk to Moore's present and future health in violation of the Eighth Amemdment. Farmer, 511 U.S. at 842.

Turning to the "subjective" component of an Eighth Amendment claim. It is undisputed on this record that Walton knew of and disregarded a substantial risk of serious harm to Moore's safety and health. The very fact she opened the cell door to allow the prisoners in the cell next to Moore's cell, whose cell also flooded with "human waste" and "raw sewage," to allow

11

those prisoners to evacuate their cell, and she posted a block worker outside Moore's cell door the entire night to keep the "human waste" and "raw sewage" from spreading into other prisoners cells and throughout the cell block, clearly demonstrates Walton knew of and disregarded a substantial risk to Moore's safety and health. It does not take a rocket scientist to know that exposure to "human waste" and "raw sewage" carries with it the very real possibility of being infected with deadly diseases. Yet, Walton ignored Moore's pleas for medical attention and to be removed from the unsafe and unsanitary conditions described above.

Moore has met the "subjective" component of the Eighth Amendment to permit a fact finder to conclude that the wrongdoing here was objectively 'harmful enough' to create a substantial risk of harm to Moore's present and future health. Helling, 509 U.S. at 35.

Given the uncontroverted record here, there is ample evidence to allow any reasonable jury to find that Defendant Walton was "deliberately indifferent" in ignoring Moore's pleas for medical attention and not taking any action to abate the substantial risk of serious harm to his safety and health.

### D.  Defendant Walton Is Not Entitled To Qualified Immunity

At page 9 of her brief in support of summary judgment, Walton argues that even if she violated Moore's constitutional rights, she is nonetheless entitled to qualified immunity. Id. On this uncontroverted record, her argument here is meritless.

The doctrine of qualified immunity protects public officials from monetary liability when their conduct that does not violate "clearly established" law. To overcome the defense of qualified immunity--to demonstrate that the law is "clearly established"--a plaintiff must show that

12

the officials had fair warning of what the law required. One way to show fair warning is by pointing to a prior case with similar facts, but that is not the only way to do so. In some instances, a constitutional violation will be so apparent or obvious that a reasonable official should know of the unconstitutionality of his or her conduct even if the facts at issue are quite dissimilar to those in prior cases. See United States v. Lanier, 520 U.S. 259, 271 (1997)(recognizing that a general constitutional rule may apply with "obvious clarity to the specific conduct in question," even though the challenged conduct has not previously been held unlawful). The Court in Anderson v. Creighton, 483 U.S. 635, 640 (1987), made a similar point when it noted that official action is not automatically protected by qualified immunity simply because "the very action in question has [not] been held unlawful. See also Mitchell v. Forsyth, 472 U.S. 511, 535 n.12 (1985).

In 2013 it was clearly established by Third Circuit decisions on this point, and there are clearly established weight of authority from other courts that have found the wrongdoing here unconstitutional. See e.g. Coble v. Damiter, WL 3231261, at 8 (M.D.Pa. 2012)("courts have consistently held that a prison official cannot "choose to remain deliberately indifferent to an excessive or substantial or serious risk of harm to inmates"); Young v. Quinlan, supra, 960 F.2d at 365 (3rd. Cir. 2002); Nyhuis v. Reno, supra, 204 F.3d 71 n.7 (3rd Cir. 2000); Gates v. Cook, 376 F.3d 323, 340-41 (5th Cir. 2004)("ping-pong" toilets occurring when the feces of one inmate bubbled up in a neighboring cell, exacerbated by overflowing toilets); and DeSpain v. Uphoff, supra, 264 F.3d at 977 (10th Cir. 2001)(exposure to flooding and human waste).

Moreover, as noted above, "[A] plaintiff need not always identify a closely analogous case; rather, he can establish a clearly established

13

constitutional right by showing that the violation was so obvious that a reasonable person would have known of the unconstitutionality of the conduct at issue. Thus, "binding precedent is not necessary to clearly establish a right." Id. Brokaw v. Mercer County, 235 F.3d 1000, 1022 (7th Cir. 2000). As noted above, sheer common sense would have alerted Walter's that her conduct here was constitutionally impermissible. The prior case law on this subject in 2013 was more than sufficient to alert Walton that ignoring Moore's pleas for assistance and leaving him soaked in "human waste" and "raw sewage" runs afoul of the Eighth Amendment. Walton cannot now claim qualified immunity for her wrongdoing.

### E. Moore Suffered More Than A De Minimis Injury

Defendant Walton's reliance on a de minimis injury defense is misplaced in this "prison conditions" case. The de minimis injury defense is normally an inquiry in "excessive use of force" cases. In "prison conditions" the inquiry is whether officials acted with "deliberate indifference" to the inmates health or safety. Hudson, supra, 503 U.S. at 5. In this "prison conditions" case Moore can sue for both "compensatory" and "punitive" damages, including punitive damages for "psychological pain and suffering." Hudson, supra, 503 U.S. at 16 (Blackman, J., concurring)("noting that the "pain prohibited by the Eighth Amendment includes psychological pain").

Moreover, Moore has factually alleged a serious physical injury that resulted in significant pain and suffering that is uncontroverted on this record. The mere knowledge that he may contact an infectious disease as a result of having "human waste" and "raw sewage" in his eyes and mouth has resulted in serious psychological pain and suffering, which also exacerbated his PTSD.

Apparently, suffering shortness of breath, chest pains, violently

vomiting for four days, diarrhea, facial rash, and psychological pain and suffering, is considered a "de minimis injury" by Defendant Walton. However, Walton fails to recognize that there is sufficient uncontroverted evidence in this case to allow any reasonable jury to find Moore suffered a "significant physical and psychological injury" and return a verdict in his favor and award both compensatory and punitive damages.

**F.  Defendant Walton Is Not Entitled to Summary Judgment**

At the summary judgment stage, "the judge's function is not himself or herself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3rd Cir. 2004)("a court may not weigh the evidence or make credibility determinations"). Rather, the court must consider all evidence and inferences drawn therefrom in light most favorable to the non-moving party. Andreoli v. Gates, 483 F.3d 641, 647 (3rd Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, "no reasonable jury could find for the non-moving party." Id. In re Bressman, 327 F.3d 229, 238 (3rd Cir. 2003). If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. Cty. of Allegeny, 139 F.3d 386, 393 (3rd Cir. 1998).

On this summary judgment record, Moore has shown sufficient uncontroverted evidence to support a jury verdict in his favor. Thus, as a matter of law, Defendant's motion for summary judgment should be denied.

The failure of Defendant Walton to proffer a sworn declaration in support of her motion for summary judgment has failed to demonstrate the absence of a genuine issue of material fact, i.e., she knew Moore faced a substantial risk of serious harm to his health and she inexcusably disregarded the risk by failing to take reasonable measures to abate it. Here, however, Walton did absolutely nothing to assist him, she was "deliberately indifferent" to Moore's safety and health.

## CONCLUSION

For all the foregoing reasons, Moore respectfully urges this court to deny Defendant Walton's motion for summary judgment.

DATED:                                        Respectfully Submitted,

9/6/17

Troy Lamont Moore, MX-9664
SCI Forest
P.O. Box 945
Marienville, PA 16239

16

## CERTIFICATE OF SERVICE

I hereby certify that I am, this day, serving a true and correct copy of "Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment" upon the person(s) indicated below by first class mail, postage prepaid, addressed as follows:

Mr. Aaron Shotland, Esquire
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102

FILED

SEP 11 2017

KATE BARKMAN, Clerk
By_____Dep. Clerk

DATED:

9 | 6 | 17

BY: _____
Troy Lamont Moore, MX-9664
SCI Forest
P.O. Box 945
Marienville, PA 16239

17

# APPENDIX

EXHIBIT  "A"   Declaration of Troy L. Moore

EXHIBIT  "B"   Declaration of Rodney Johnson

EXHIBIT  "C"   Declaration of Larry Rodriquez

# EXHIBIT - A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TROY LAMONT MOORE, | : | CIVIL ACTION |
| PLAINTIFF | : | |
| | : | |
| | : | |
| V. | : | NO. 14-3873 |
| | : | |
| | : | |
| LOUIS GIORLA, et al., | : | |
| DEFENDANTS | : | |

## DECLARATION BY PLAINTIFF TROY L. MOORE

I, Troy L. Moore, hereby declare under penalty of perjury and pursuant to 28 U.S.C. 1746, that the following is true and correct based upon my personal knowledge or from my review of records.  Which I am willing and available to testify before a jury trial against defendant Saajida Walton.

1.  At all times relevant herein, plaintiff was incarcerated at county prison (PICC) and state prisons (SCI Graterford, SCI Forest).

2.  At all times relevant herein, defendant **Saajida Walton** (here after, Walton)

3.  On September 16, 2013 at 2315 hrs. while incarcerated at PICC, the toilet in my cell violently exploded covering my cell and soaking me in human waste & raw sewage including exposure to mouth and eyes.

4. The block officer on duty (defendant walton) made rounds approx. five minutes after the incident occured. During rounds, defendant walton, after being informed by me of the state of emergency, looked at me, acknowledged me, turned her head and proceeded with her rounds. I continued to bang on my cell door throughout the night requesting assistance from defendant walton when she made her rounds, but she continued to ignore me.

5. After approx. two hours of banging on the cell door and pleading for defendant walton to assist me, I began to experience shortness of breath, chest pains, head ache, violent vomiting, anxiety and difficulty breathing.

6. In addition to me banging and pleading for assistance, other inmates in addition to Johnson and Rodriquez **(Ref. Exibits B&C)** also informed defendant walton that plaintiff needed medical attention. The only actions taken were **(1)** allowing a block worker to exit his cell, posting him outside my cell door to keep the human waste & raw sewage at bay to prevent it from spreading through out the cell block and **(2)** defendant walton opened the cell next to plaintiff's cell allowing the inmates to evacuate, sanitize their cell and themselves due to it also being flooded with human waste & raw sewage.

7. On numerous occasions throughout the night, I informed walton that I was having serious medical issues (shortness of breath, chest pains, head ache, violent vomiting, anxiety and difficulty breathing).

8.   On September 17, 2013 at 0722 hrs. after defendant walton's
shift ended, the maintenance dept. was notified and at 0751
hrs., the maintenance dept. dispatched workers (as reflected
by electronic log records) prompting prison officials to treat
the incident as an emergency.  I was then permitted to exit
the cell, due to me being saturated in human waste & raw sewage,
permitted to shower, change clothes (because the only pair of
clothes I had were the soiled pair I had on).  Only then at
approx. 0840 hrs. I was escorted to the medical dept. to be
seen for urgent medical needs (shortness of breath, chest pains,
head ache, violent vomiting, anxiety and difficulty breathing).

9.   While at the medical dept. I informed the medical dept.
personel of my symptoms from exposure to conditions of my cell
(human waste & raw sewage).  In less than sixty seconds, nurse
McGrogan took my pulse and instructed me to return to my housing
unit.  I was instructed to submit a sick call slip to receive
treatment for any further medical conditions that may occur
from the exposure to human waste & raw sewage.

10. After the initial screening by the medical dept., my symptoms
from being exposed for a prolonged period of time (approx. eight
hours) became significantly worse.  I experienced severe vomiting
the inability to hold down any food for several days, significant
weight loss, head aches, incapable of sleep, lack of energy,
a severe rash in patches from my head to my feet that resulted
in painful burning, blistering and itching that lasted more
than two weekd.

As a result of the medical conditions set forth above, I
submitted several sick call requests following being exposed
to the human waste & raw sewage and was subsequently seen by
the triage nurse.   I was prescribed numerous medications to
treat the above described medical issues.

11. I have been plagued with obsessively fixated thoughts of
becoming infected with a disease such as **(Aids, Hepatitis C
and Tuberculosis)** stemming from prolonged exposure to human
waste & raw sewage which also entered my mouth and eyes when
the toilet violently exploded.   This has caused me to suffer,
even today, psychologically devastating affects, depression,
severe sleep disturbances, suicidal thoughts, difficulty
sustaining thoughts, focusing on a subject for more than a few
minutes, feelings of anxiety, frustration and exasperating my
mental disability associated with my pre-existing PTSD. Because
of the devastating psychological affects described above, while
still confined as PICC in September 2013 & October 2013, I
submitted mental health requests to be seen by the psych. dept.
In October 2013 I was seen by the psychiatrist at PICC,
evaluated, prescribed Zoloft and other powerful psychological
medications to treat my psych. problems I was having due to
being exposed to the human waste & raw sewage for a prolonged
period of time.

12. On November 11, 2013 I was transferred to SCI Graterford.
I was still suffering from excessive fixated thoughts of
contracting any number of infectious diseases **(Aids, Hep C
and Tuberculosis).**

I was seen by the psychiatrist at SCI Graterford and was subsequently prescribed powerful psych. medications to treat psychological problems.

13. On April 1, 2014 I was transferred to SCI Forest.  I continued to experience devastating psychological affects of having obsessively fixated thoughts about contracting an infectious disease due to my exposure to human waste & raw sewage.  The psychiatrist at SCI Forest continues to prescribe powerful psych. medications (**Zoloft & Rispirdal**) as to date.

14. For more than a month following my prolonged exposure to human waste & raw sewage, I suffered severe pain.  I continue even today, to experience psychological affects of excessively fixated thoughts of contracting a deadly disease and dying in prison due to the inexcusable indifference to my health by defendant Walton.

DATED:                          BY:

9|6|17

Troy L. Moore, MX-9664
SCI Forest
P.O. Box 945
Marienville, Pa. 16239

# EXHIBIT - B

## Affidavit

I Rodney Johnson 1013365 state under the penalties of Pa. C. T. 4904

relating to unsworn falsification to authorize the following.

**That this is a sworn statement of the true facts of the following in behalf**

**Of:**

ON the NIGHT OF SEPTEMBER 16, 2013 AROUND 11:00 PM I WITNESSED THE PERSON SPOKEN OF ATTEMPING TO NOTIFY THE C/O ON DUTY OF A BACK UP AND OVER FLOWING OF HIS TOILET WITHIN HIS CELL. ON SEVERAL ATTEMPS I HEARD AND SAW HIM BANGING AND KNOCKING ON HIS DOOR WHILE YELLING TO THE C/O THAT THE INCIDENT WAS ACCURING. THERE WAS FICAL MATTER WITHIN THE WATER WHICH WAS POURING OUT OF HIS CELL AND ENTERING MINE. I ALSO YELLED TO THE C/O LETTING THEM UNDERSTAND WHAT WAS TAKING PLACE AND HOW DISGUSTING IT WAS. WITH ALL THE WARNINGS AND YELLING THE C/O ON DUTY REFUSED TO REACT AND PROCEEDED TO IGNORE ALL WARNINGS. NOT ONLY DID THEM NEGLECT TO REACT THAT NIGHT THEY MADE THE PERSON SPOKEN OF STAY WITHIN HIS CELL ALL NIGHT. UNTIL THE NEXT MORNING. ALSO MAKING MYSELF AND OTHERS WHO CELLS ALSO FLOODED SUFFER. 8:00 AM OR AROUND THAT TIME THE NEXT MORNING. HE WAS FINALLY ALLOWED TO EXIT AND CLEAN HIS CELL. BUT THE OTHER CELLS WERE NOT ALLOWED TO EXIT AND CLEAN THERE CELLS. BECAUSE OF THIS INCIDENT I KNOW HAVE AN INFESTATION OF KNATS WITHIN MY CELL AND ALSO A LIGHT ODOR THAT STILL HASN'T LEFT.

Sworn before me 20th day of _____ 201_

_____
Notary

_____
Signature of Affidavit

EXHIBIT "C"

Exhibit 1
3

## Affidavit

I, __LARRY RODRIGUEZ PPE # 112 5016_____, state under the penalties of Pa.
C.T. 4904 relating unsworn falsification to authorize the following.

That is a sworn statement of the true facts of the following in behalf of __TROY MOORE PPE#853463__

(con't from previous page 1), and frame of my cell door. The smell
of feces was unmistakable. As I listened carefully, I recognized
the voice of Mr. Troy Moore PPE # 853463, who resides in cell #18. Mr.
Moore was begging for help. He said "That there was 2 inches of raw
sewage in his cell". Mr. Moore also stated that, "All I want is someone to
please help me". As the evening progressed into early morning, only cell
#19 was allowed out to clean reluctantly. I observed that Mr. Moore
PPE# 853463 in cell #18 was not allowed out and was left to muddle
in raw sewage. I fell asleep, but not sure at what time. I awoke
the morning of September 17, 2013. I got dressed and walked up to my
cell door (cell #26). I observed that there was still water with
foreign debris still on the floor, in the vicinity of cell #19 and
spread out toward the area and direction of cell #18. I could
again hear Mr. Moore PPE # 853463 complaining about the
inundation. I deduced that cell #18 was still flooded by Mr.
Moores statement of, "I spent all night in raw sewage", and "I could
not sleep". Mr. Moore PPE # 853463 was eventually compelled to map
possibly infectious waste material without proper material and
(con't the next page, page 3, 2 of 3) —————————>

Sworn before me _____ day of _____ 201___

_____
Notary

ALL RIGHTS RESERVED
without prejudice
_____
Signature of Affidavit

Exhibit
3

## Affidavit

I, LARRY RODRIGUEZ, PPE # 112-5016 , state under the penalties of Pa.
C.T. 4904 relating unsworn falsification to authorize the following.

That is a sworn statement of the true facts of the following in behalf of TROY MOORE PPE# 853403

(con't from previous page 2.) without proper protection, i.e. gloves, mask, or chemicals, etc. This is unacceptable exposure to biohazardous material. Which demands proper procedure and equipment, in order to dispose of properly in according to OSHA standards (occupational safety and hazards association). Mr. Moore PPE# 853403 was visibly upset and distressed. END OF STATEMENT @ September 17, 2013. Nothing Follows. @ 17SEP2013

Nothing Follows

END OF STATEMENT @ 17SEP2013

Sworn before me _____ day of _____ 201__

_____

Notary

ALL RIGHTS RESERVED
without prejudice
Signature of Affidavit