PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1868
_____

TROY LAMONT MOORE, SR.,

Appellant

v.

C.O. SAAJIDA WALTON
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-14-cv-03873)
District Judge: Honorable Eduardo C. Robreno
_____

Argued: November 8, 2023

Before: RESTREPO, SCIRICA, and SMITH, *Circuit Judges*.

(Filed: March 21, 2024)


Jonathan Dame
Regina Wang [ARGUED]
Yiyang Wang
Brian S. Wolfman

Georgetown University Law Center
Appellate Courts Immersion Clinic
600 New Jersey Avenue NW
Suite 312
Washington, DC 20001
    *Counsel for Appellant*

Elise M. Bruhl
Meghan Byrnes [ARGUED]
City of Philadelphia
Law Department
1515 Arch Street
17th Floor
Philadelphia, PA 19102
    *Counsel for Appellee*

_____

## OPINION OF THE COURT
_____

**SCIRICA**, *Circuit Judge*

This case involves the relation back doctrine and whether Federal Rule of Civil Procedure 15(c)(1)(C)'s reference to "the period provided by Rule 4(m)" includes any "good cause" extensions granted under that rule.

After the toilet in plaintiff Troy Moore, Sr.'s prison cell exploded, covering him and the entire cell in human sewage, defendant Correctional Officer Saajida Walton refused to let

Moore out of his cell to clean up for over eight hours. Initially proceeding pro se, Moore sued under 42 U.S.C. § 1983, arguing Walton violated his Eighth Amendment rights. However, through no fault of his own, Moore's original complaint misspelled Walton's name as "Walden," and despite the District Court finding "good cause for the delay in service in this case," J.A. 265, Moore was unable to correct the error until well after the statute of limitations on his claim expired.

On the parties' cross-motions for summary judgment, the District Court denied Moore's motion and granted Walton's motion on statute of limitations grounds, reasoning "[t]here is no evidence in the record that Walton knew or should have known of this action before the statute of limitations had run," Add. 10, and so Moore's amended complaint did not relate back to his original complaint under Rule 15(c)(1)(C). In doing so, however, we believe the District Court misapplied the relation back analysis by failing to look to the period for service under Federal Rule of Civil Procedure 4(m) in assessing notice, as required by Rule 15(c)(1)(C). Consequently, the District Court did not have occasion to consider whether that notice period incorporates the service extension it previously granted to Moore for good cause under Rule 4(m). Because we hold that Rule 15(c)(1)(C)'s reference to "the period provided by Rule 4(m)" includes any extensions for service granted under that rule for good cause, we will vacate the District Court's order.

## I.

The following facts are undisputed. *See, e.g.*, Dkt.[1] 39 at 6-7; Appellee Br. 45 (conceding "Walton did not specifically contest the facts set forth in [Moore's] summary judgment motion").

## A.

At approximately 11:15 p.m. on September 16, 2013, while incarcerated in the Philadelphia Industrial Correctional Center ("PICC"), Moore was sitting in his prison cell when "the water in the toilet absolutely exploded covering [him] in raw sewage." J.A. 172. "[T]he burst out of the toilet was so violent there was defecation four feet high [up] the walls," as well as contaminant in Moore's eyes and mouth. *Id.* at 172-73. He immediately vomited and experienced shortness of breath and chest pain.

Five minutes later, Walton—the correctional officer on duty that night—walked by Moore's cell. Moore avers that despite calling out to her for help, Walton "looked at me, acknowledged me, turned her head and proceeded with her rounds." *Id.* at 242. When, for the next hour, Moore stood in the flood of sewage banging on his cell door and pleading for Walton's assistance, Walton "act[ed] like she couldn't hear" him. *Id.* at 176-77; *accord id.* at 247, 249. Instead, Walton let a neighboring inmate out of his cell to mop the floor outside of Moore's door and then released additional inmates in

---

[1] "Dkt." citations refer to the docket before the District Court, *Troy Lamont Moore, Sr. v. C.O. Saajida Walton*, No. 14 Civ. 3873 (ER) (E.D. Pa.).

neighboring cells—but not Moore—to bathe and clean their unit. Eventually, Moore stopped his cries for help because he was in such "distress" and "had to . . . lay down." *Id.* at 177. He remained trapped in his cell until approximately 7:30 a.m. the next morning and was released only after Walton ended her shift.

B.

The next day, Moore filed an Inmate Grievance Form with the Philadelphia Prison System. The Grievance referred only to "[t]he c/o" without specifying Walton by name. *Id.* at 24.

Prior to initiating this action, Moore attempted to ascertain Walton's identity from prison authorities. PICC eventually provided Walton's name orally, and based on how it sounded, Moore believed it was spelled "Walden." When Moore filed his initial complaint on June 23, 2014, he named "Walden, Correctional Officer" as one of the defendants. *Id.* at 15; *see* Dkt. 3 (the "Original Complaint"). Suing under 42 U.S.C. § 1983, Moore alleged he was subjected to unconstitutional conditions of confinement. On June 26, 2014, the District Court approved Moore's application to proceed *in forma pauperis* and directed the U.S. Marshals Service to serve the defendants. The summons issued to "Walden" was returned unexecuted on October 22, 2014.

The District Court held a status conference on December 14, 2014, at which an attorney for the City of Philadelphia (the "City") appeared. The City represented that it had been unable to identify anyone named "Walden" working at PICC. When asked to provide any information that "may be helpful," Moore explained that "CO Walden" was "an

older female" who "works the graveyard shift" "on G2 of PICC Prison in Philadelphia" and was "on duty when the incident happened." Dkt. 44 at 9. In response, the District Court asked whether the City was "tak[ing] into account those [employees] who may have retired," to which the City replied that "the process is looking through who was working at the time of the incident." *Id.* at 10.

In addition, the District Court granted in part Moore's motion to compel video footage and various repair and medical reports concerning the incident and ordered the evidence be preserved. The District Court subsequently ordered the City to produce those records to Moore on April 6, 2015. One of the records provided was a log of events from the night of the incident with numerous entries by "WALTON_S." J.A. 51. As for the video evidence, however, the City submitted a declaration from PICC's warden claiming that despite "conduct[ing] an exhaustive search," "any video of Plaintiff's cell and the area surrounding it has been destroyed." Dkt. 31 ¶¶ 3, 6.

When, by December 17, 2015, the City had still failed to identify "Walden," the District Court dismissed Moore's claim against her without prejudice given his failure to serve a summons and the Original Complaint. Moore filed an amended complaint shortly thereafter.[2] *See* Dkt. 46

_____

[2] The Amended Complaint was dated December 31, 2015, the "Certificate of Service" attached to it states that Moore "caused [the Amended Complaint] to be served" on December 30, 2015, J.A. 121, the envelope in which Moore mailed the Amended Complaint to the District Court is

("Amended Complaint"). The Amended Complaint contained the same factual and legal allegations as the Original Complaint but renamed the defendant as "Corrections Officer S. Walton." *Id.*

Despite correcting this spelling error, challenges to serving Walton persisted. The summons issued to "C.O. S. Walton" on February 10, 2016 was never returned (executed or otherwise). J.A. 7. On June 17, 2016, the District Court extended Moore's deadline to serve for an additional sixty days. A second summons was finally returned unexecuted on October 24, 2016, with the City claiming only that it "need[ed] more info" in order to accept service on Walton's behalf. Dkt. 48. On November 2, 2016, the District Court ordered Moore to provide "S. Walton's" first name, and informed Moore for the first time that "[t]he City of Philadelphia has indicated that [the] only individual with a similar name is Saajida Walton who was employed as a correctional officer from July 7, 2008 to April 5, 2014." Dkt. 49.[3] Moore responded less than two weeks later—on November 15, 2016—confirming that "Saajida Walton" was the person he intended to serve. The District Court again extended Moore's service deadline, and Walton was finally served on May 2, 2017.

That same month, Walton moved to dismiss the Amended Complaint. She argued the statute of limitations had run on Moore's claim before he filed the Amended Complaint,

---

stamped January 15, 2016, and the Amended Complaint was docketed on February 10, 2016.

[3] The record does not indicate how or when the District Court learned Walton's full name.

and the Amended Complaint did not relate back to the Original Complaint because Moore "did not in any way notify [her] of this lawsuit within the timeframe provided by Rule 4(m) – 90 days." Dkt. 59 at 6. At a hearing to resolve Walton's motion, Moore, still pro se, maintained he had "pursued all avenues to serve the defendant in a timely manner," including seeking information from the "prison," the "human resources department," and the "right-to-know office." J.A. 256. He also claimed he only learned the correct spelling of Walton's full name in November 2016, after the City provided him with the preserved discovery, even though the City and the prison "knew exactly who [Moore] was referring to" throughout. *Id.* at 262-63.

The District Court denied Walton's motion to dismiss, concluding Moore "has shown good cause for the delay in service in this case." *Id.* at 265. The District Court reasoned

> it is credible that the plaintiff made a number of attempts, through court administrators, to straighten out the name. This is a matter that went through the grievance process and the authorities. And it is likely that the correctional officer knew of the nature of this grievance. And what we had here is simply a spelling error; an error that the defendants provided no assistance in correcting, until the time had run out.
>
> So I find that the plaintiff made good faith efforts to learn the proper spelling of the defendant's name; and that, for no fault of his own, he was unable to do so within the time provided for in the rule. That justifies the Court's finding of good cause in this case for

service to have occurred outside of the 90 days.

*Id.* at 266.

At the District Court's direction, the parties subsequently cross-moved for summary judgment. Moore argued he was entitled to judgment as a matter of law on his Eighth Amendment claim, the facts of which were undisputed. Walton again argued *inter alia* that Moore's claim was barred by the statute of limitations and that the Amended Complaint did not relate back to the Original Complaint. The District Court granted Walton's motion and denied Moore's motion on statute of limitations grounds. Without acknowledging its earlier relation back holding, the District Court found Moore was not entitled to rely on the relation back doctrine because "[t]here is no evidence in the record that Walton knew or should have known of this action before the statute of limitations had run," Add. 10, and Moore "failed to show that Walton had either actual notice or constructive notice within the required 120 day period under Rule 15(c)," *id.* at 12.

Moore timely appealed.

## II.[4]

Our review of the parties' cross-motions for summary judgment is plenary, and we apply the same standard as the lower court under Federal Rule of Civil Procedure 56. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d

---

[4] The District Court had original jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

Cir. 2016). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

We review the District Court's interpretation of the relation back doctrine de novo, *Hodge v. United States*, 554 F.3d 372, 377 (3d Cir. 2009), and its embedded good cause determination for abuse of discretion, *see Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 568 (3d Cir. 1996).

## III.

A civil rights action under section 1983 is subject to the personal injury statute of limitations of the state in which the cause of action accrued. *See O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006). In Pennsylvania, where Moore's cause of action accrued, the statute of limitations for personal injury actions is two years. 42 Pa. Cons. Stat. § 5524(7). No one disputes Moore filed the Original Complaint within the applicable statute of limitations; Moore's claim accrued on September 16, 2013—the date of the incident, and he filed the Original Complaint on June 26, 2014—less than two years later. Nor do the parties dispute Moore filed and served Walton with the Amended Complaint, where he correctly named Walton as a defendant for the first time, after the statute of limitations elapsed. Accordingly, Moore's claim appears to be time-barred.

That said, "the relation-back doctrine under Rule 15(c)

allows a court to treat a later-filed amended pleading as if it had been filed at the time of the initial pleading." *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 344 (3d Cir. 2021). It thus "ameliorate[s] the running of the statute of limitations." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001). In particular, Rule 15(c)(1)(C) permits relation back when an amendment to a pleading "changes the party or the naming of the party against whom a claim is asserted." To do so, three requirements must be satisfied: *first*, the claim against the newly added defendant must arise "out of the conduct, transaction, or occurrence set out . . . in the original pleading," Fed. R. Civ. P. 15(c)(1)(B); *accord* Fed. R. Civ. P. 15(c)(1)(C) (requiring satisfaction of Rule 15(c)(1)(B)); *second*, the newly named party must have "received such notice of the action that it will not be prejudiced in defending on the merits," Fed. R. Civ. P. 15(c)(1)(C)(i); and *third*, the newly named party must have or should have known that "but for a mistake" made by the plaintiff concerning the newly named party's identity, "the action would have been brought against" the newly named party in the first place, Fed. R. Civ. P. 15(c)(1)(C)(ii). *See also Singletary*, 266 F.3d at 193-94. Critically, the second and third requirements must be satisfied "within the period provided by Rule 4(m) for serving the summons and complaint." Fed. R. Civ. P. 15(c)(1)(C); *see also Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 458 & n.10 (3d Cir. 1996).

Walton does not dispute the first and third conditions are satisfied. That leaves the second condition, which itself has two components each of which must be satisfied: notice and

the absence of prejudice.[5] *See Urrutia*, 91 F.3d at 458.

## A.

In assessing whether Walton "received such notice of the action," Rule 15(c)(1)(C) directs us to "the period provided by Rule 4(m)." Rule 4(m), in turn, states

> [i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Because Rule 4(m) sets a default period for service of 90 days,[6] we would ordinarily ask whether Walton received notice of Moore's action within 90 days of the filing of the Original Complaint. *See Urrutia*, 91 F.3d at 458. But here, Moore does not contend Walton received such notice of the action within the default Rule 4(m) service period. Rather, he argues the notice requirement was satisfied when Walton was served with the Amended Complaint—on May 2, 2017. While this is well-

---

[5] Because we conclude the District Court erred in its application of the notice requirement and remand for further consideration of that issue, we need not address the parties' arguments on prejudice.

[6] At the time this action was being litigated before the District Court, the default period for service was 120 days.

outside the default period under Rule 4(m)—by 924 days—
Moore argues the District Court extended his deadline to serve
Walton under Rule 4(m)'s "good cause" extension provision
until that date, and such an extension is included in the notice
period set by Rule 15(c)(1)(C).

The appropriate place to begin is with the text of the
rule. As previously noted, Rule 15(c)(1)(C) requires, in
relevant part, that a newly added defendant receive "notice of
the action" "within the period provided by Rule 4(m)." Rule
4(m) sets this period as 90 days unless "the plaintiff shows
good cause for the failure" to serve. In such a case, Rule 4(m)'s
service period is enlarged because the district court "*must*
extend the time for service for an appropriate period." Fed. R.
Civ. P. 4(m) (emphasis added). By referencing only "the
period provided by Rule 4(m)," and not "the *initial*" or "*default*
period provided by Rule 4(m)," the plain text of Rule
15(c)(1)(C) means to include the entire Rule 4(m) service
period, which includes any mandatory extensions granted for
good cause. Indeed, Rule 4(m) is written as one provision,
without a subdivision for the good cause extension mandate.
Consequently, Rule 15(c)(1)(C)'s reference to "the period
provided by Rule 4(m)" is not limited to just the default 90
days since Rule 4(m) also encompasses the mandatory good
cause extension provision.

The Advisory Committee's note to Rule 15(c)(1)(C)
confirms this reading. The Committee explained that "[i]n
allowing a name-correcting amendment within the time
allowed by Rule 4(m), [Rule 15(c)(1)(C)] allows not only the
[90] days specified in that rule, *but also any additional time
resulting from any extension ordered by the court pursuant to
that rule*." Fed. R. Civ. P. 15 advisory committee's note to the
1991 amendment (emphasis added). While not binding, "the

Advisory Committee's notes on the federal rules are 'of weight' in interpreting the meaning of the rules." *In re Nat'l Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 577 n.6 (3d Cir. 2014) (quoting *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988)); *see also Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550-51, 554 n.5 (2010) (considering the Advisory Committee's notes in interpreting Rule 15(c)(1)(C)). In this case, the note indicates Rule 15(c)(1)(C) was specifically drafted to incorporate extensions to service deadlines for good cause, such as the extension granted to Moore.

We also do not write on a blank slate. Our sister circuits that have addressed this issue have all concluded that Rule 15(c)(1)(C)'s reference to Rule 4(m) incorporates Rule 4(m)'s "good cause" extension provision. *See McGraw v. Gore*, 31 F.4th 844, 849 (4th Cir. 2022) ("Relation back is allowed, in other words, so long as the added defendant had notice within the 90 days – or any 'good cause' extension – allowed under Rule 4(m)." (quoting *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010))); *Rodriguez v. McCloughen*, 49 F.4th 1120, 1122-23 (7th Cir. 2022) (faulting the district court's relation back analysis for failing to consider whether the delay in service fits within the "good cause" exception under Rule 4(m)); *Lee v. Airgas Mid-S., Inc.*, 793 F.3d 894, 897 & n.3 (8th Cir. 2015) (noting Rule 15(c)'s requirement that defendant "receiv[e] notice of [the] lawsuit within [90] days after the complaint was filed" "also can be extended by any service-of-process extensions the district court might grant for 'good cause'" (internal brackets omitted)); *Jackson v. Herrington*, 393 F. App'x 348, 353 (6th Cir. 2010) ("[W]e see no reason for incorporating Rule 4(m)'s [90]-day baseline into Rule 15 without also incorporating Rule 4(m)'s good-cause baseline

exception."); *McGuire v. Turnbo*, 137 F.3d 321, 325 (5th Cir. 1998) (holding "a complaint will relate back under Rule 15(c) when the district court has enlarged Rule 4(m)'s notice period"); *see also* 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1498.1 n.10 (3d ed. 2023) (collecting cases).

And while we have yet to explicitly address this issue, we have previously recognized another circumstance where the notice period set by Rule 15(c)(1)(C) may be enlarged beyond the baseline set by Rule 4(m). In *Urrutia v. Harrisburg County Police Department*, we held the deadline for satisfying the requirements of Rule 15(c)(1)(C) for plaintiffs proceeding *in forma pauperis* is suspended pending the district court's mandatory screening under 28 U.S.C. § 1915. 91 F.3d at 453-54. And in *Lundy v. Adamar of New Jersey, Inc.*, we noted, in dicta, that because plaintiffs asserted they satisfied the requirements for Rule 15(c) relation back within the default period set by Rule 4(m), "[t]his case . . . does not involve the issue of the circumstances under which the period for applying the [notice] requirements [of Rule 15(c)] may be longer than [90] days" such as when the district court extends the period to serve under Rule 4(m). 34 F.3d 1173, 1181 & n.12 (3d Cir. 1994) (citing the advisory committee note discussed *supra*).

Walton fails to point to any authority—district court or circuit—endorsing a contrary reading of Rule 15(c)(1)(C). Instead, she urges us to "reserve the benefit of an expanded notice period only for plaintiffs who can demonstrate a delay beyond their control." Appellee Br. 34. In addition, Walton would limit our holding in *Urrutia* and the holdings in the cases from our sister circuits to situations where the delay in service was caused by mandatory screening, such as under section 1915 or the Prison Litigation Reform Act, 42 U.S.C.

§ 1997e(a). But such limitations would be contrary to the plain text of the rule. *See Krupski*, 560 U.S. at 553 (Rule 15(c)(1)(C) "plainly sets forth an *exclusive* list of requirements for relation back, and the amending party's diligence is not among them." (emphasis added)). Again, Rule 15(c)(1)(C) refers to only the "period provided by Rule 4(m)," and Rule 4(m) provides that its default 90-day period must be extended whenever the district court finds "good cause"—not "delay beyond plaintiff's control," or "delay caused by mandatory district court screening."

Finally, Walton warns that Rule 4(m)'s good cause standard is not a "sufficient limiting principle" for relation back because it is too "lenient." Appellee Br. 41. Even if that were true, the Advisory Committee note explicitly indicates that the drafters of the rule believed differently; Rule 15(c)(1)(C) was drafted to include in its notice period "*any additional time* resulting from *any extension* ordered by the court pursuant to*" Rule 4(m). Advisory Committee Note, *supra* (emphasis added). But more to the point, we feel that Walton's concerns are overstated. District courts retain plenty of tools to account for unreasonable delay, and we still review a district court's good cause determination for abuse of discretion. *See, e.g.*, *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995) (district court abused its discretion in finding good cause to excuse late service where the record was devoid of any explanation for plaintiff's lack of diligence and failure to move to enlarge the time to serve); *see also Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997) (district court did not abuse its discretion in finding no good cause to extend plaintiff's time to serve when "[n]othing in the record . . . justified Boley's ineffective attempts at service and his failure to make a timely motion for an extension of time");

16

*Green v. Humphrey Elevator and Truck Co.*, 816 F.2d 877, 884 (3d Cir. 1987) (plaintiff failed to demonstrate good cause when he "waited until the eve of the service deadline" to mail a summons, failed to serve the defendants before the cutoff, and did not "present facts that would justify" the belated service attempt).

Accordingly, we hold that Rule 15(c)(1)(C)'s notice period incorporates mandatory extensions granted for "good cause" under Rule 4(m).

### B.

Having concluded Rule 15(c)(1)(C)'s reference to Rule 4(m) incorporates any good cause extensions granted under that rule, we now evaluate the District Court's analysis. In resolving the parties' cross-motions for summary judgment, the District Court found the Amended Complaint did not relate back to the Original Complaint because "[t]here is no evidence in the record that Walton knew or should have known of this action before the statute of limitations had run." Add. 10. This reasoning is erroneous because "the limitation period for purposes of analyzing whether [a] newly added defendant received notice and should have had knowledge of the action as required for relation back under Rule 15(c) is not the statute of limitations for the underlying claim, but instead the [Rule] 4(m) service period." *McGraw*, 31 F.4th at 849 (first alteration in original) (internal quotation marks omitted); *accord Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003). The District Court therefore erred to the extent it looked to the statute of limitations rather than the period for service under Rule 4(m) to assess notice.

But even to the extent the District Court properly looked

to the Rule 4(m) service period to assess notice,[7] it failed to account for the good cause extension it previously granted Moore in denying Walton's motion to dismiss the Amended Complaint. As noted above, the District Court previously concluded that Moore "has shown good cause for the delay in service in this case." J.A. 265. Moore argues this ruling "extended the Rule 4(m) period for service up to the day [Walton] was served" with the Amended Complaint, and so "[i]t necessarily follows that she received notice within the Rule 4(m) period." Appellant Br. 20 (citing *Urrutia*, 91 F.3d at 460-61); *accord id.* at 17. Based on our analysis above, we agree the District Court's good cause service extension enlarged the relation back notice period beyond the initial 120 days. The problem with Moore's argument, however, is that it conflates the Rule 4(m) service period for the Original Complaint with the Rule 4(m) service period for the Amended Complaint.

It is blackletter law that "[f]iling an amended complaint does not toll the Rule 4(m) service period" for an original complaint. 4B Wright & Miller, *supra*, § 1137; *see also Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006) ("[T]he . . . period provided by Rule 4(m) is not restarted by the filing of an amended complaint . . . ."). "[A]t best, adding

---

[7] Although the District Court initially referred to the statute of limitations as the relevant notice period for relation back, it later referred to the default period under Rule 4(m)—then 120 days. *See* Add. 12 ("Because Plaintiff has failed to show that Walton had either actual notice or constructive notice within the required 120 day period under Rule 15(c), Plaintiff's Amended Complaint does not relate back to the date of the [I]nitial Complaint.").

a new party through an amended complaint initiates a new . . . timetable for service upon the added defendant." *Lee*, 793 F.3d at 898 (internal quotation marks and emphasis omitted). Rule 15(c)(1)(C)'s notice requirement "looks to the Rule 4(m) period for serving the original complaint" not an amended complaint. *Id.* (emphasis omitted); *see also Garvin*, 354 F.3d at 220 (noting the newly added defendants "must have received notice of the institution of the action within 120 days following *the filing of the action*" (emphasis added)); *Urrutia*, 91 F.3d at 459 n.14 (In "a situation where the court orders service of an original complaint . . . and sometime later orders service of an amended complaint[,] . . . . the 120 day period specified by Rule 15(c)[(1)(C)] begins to run on the date service of the original complaint was ordered."). Accordingly, any good cause extension to the service period for the Amended Complaint would not be included in Rule 15(c)(1)(C)'s notice period.

While not entirely clear, we interpret the District Court's ruling that there was "good cause for the delay in service *in this case*," J.A. 265 (emphasis added), as applying to the Rule 4(m) service period for both the Amended *and* the Original Complaints. In support of its good cause finding, the District Court pointed to the "number of attempts, through court administrators, to straighten out [Walton's] name." *Id.* at 266. As recounted above, those "attempts" primarily occurred between 2014 and 2015—prior to the filing of the Amended Complaint, *see supra* II.B—and so they naturally justify good cause for delayed service of the Original Complaint, not the Amended Complaint. However, despite being extended past the initial 120 days for good cause, the Rule 4(m) service period for the Original Complaint necessarily ended when the Original Complaint was dismissed—on December 17, 2015.

Accordingly, the notice period for Rule 15(c)(1)(C) ended on that date as well.

Apart from unsworn statements from the City in its briefing in support of Walton's motion to dismiss the Amended Complaint and motion for summary judgment that Moore "did not in any way notify Saajida Walton of this lawsuit within the timeframe provided by Rule 4(m)," Dkt. 59 at 6; *accord* Dkt. 65 at 8, the parties and the District Court have not addressed, and the current record contains no evidence concerning whether Walton received notice of the action before December 17, 2015. However, as the District Court recognized, "[t]his is a matter that went through [PICC's internal] grievance process" and "it is likely that [Walton] knew of the nature of this grievance." J.A. 266.[8] We will therefore vacate and remand to the District Court to determine, in the first instance, whether Walton received actual or constructive notice of the

---

[8] We note, however, that notice of the administrative grievance proceeding alone would not be sufficient to demonstrate notice for the purposes of relation back. Rule 15(c)(1)(C) refers to "notice of the action," but the administrative grievance proceeding occurred almost nine months prior to the initiation of the action, or the "filing of the original complaint." *Garvin*, 354 F.3d at 220; *see also Singletary*, 266 F.3d at 195 ("[T]he notice received must be more than notice of the event that gave rise to the cause of action; it must be notice that the plaintiff has instituted the action.").

action by December 17, 2015.[9]

## C.

Walton tries to avoid this outcome by arguing that the District Court abused its discretion when it determined good cause existed to extend Moore's service deadline.[10] We disagree. To demonstrate good cause, a plaintiff must demonstrate "good faith" and "some reasonable basis for noncompliance within the time specified in the rules." *MCI*, 71 F.3d at 1097 (internal quotation marks omitted). Good cause is thus akin to "excusable neglect." *Id.*

In this case, the District Court found good cause because Moore "made a number of attempts, through court administrators, to straighten out [Walton's] name" and his failure to timely serve essentially boiled down to "a spelling error; an error that the defendants provided no assistance in correcting, until the time had run out." J.A. 266; *see also id.*

---

[9] In doing so, the District Court may exercise its discretion as to whether to permit additional discovery on the issue of notice and/or whether to hold an evidentiary hearing, as well as whether to appoint Moore pro bono counsel.

[10] Walton also contends the District Court abused its discretion in permitting Moore to file the Amended Complaint in the first place. But Walton failed to raise this argument before that Court. Rather than opposing the amendment under Rule 15(a), Walton moved to dismiss under 12(b), raising the same statute of limitations arguments addressed above. The argument is therefore waived on appeal. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 261 (3d Cir. 2009).

("I find that the plaintiff made good faith efforts to learn the proper spelling of the defendant's name; and that, for no fault of his own, he was unable to do so within the time provided for in the rule."). This ruling was reasonable, and certainly not an abuse of discretion. While Moore may have known the correct spelling of Walton's name for over five months prior to filing the Amended Complaint, we find this did not constitute "undue delay," particularly in light of Moore's then-pro se status, the many attempts he made to ascertain Walton's identity, and the City's willful failure to provide assistance until after the statute of limitations elapsed.

## IV.

For the foregoing reasons, we will vacate the District Court's order granting Walton's motion for summary judgment and denying Moore's motion for summary judgment and will remand for further proceedings consistent with this opinion. In particular, the District Court should address (1) whether Walton received notice of the action by December 17, 2015, and if so (2) whether Moore can demonstrate the absence of prejudice—the final element necessary to satisfy the relation back inquiry, and if so (3) the merits of Moore's Eighth Amendment claim.