## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TROY LAMONT MOORE, SR.,

        *Plaintiff,*

    v.

C.O. SAAJIDA WALTON,

        *Defendant.*

CIVIL ACTION
NO. 14-3873

**Pappert, J.**                                                                        **July 18, 2025**

### MEMORANDUM

This motion for Rule 11 sanctions comes against the backdrop of a procedural history more fully described in a prior opinion. *See Moore v. Walton*, No. 14-3873, 2024 WL 4756902 (E.D. Pa. Nov. 12, 2024). In 2024, the Third Circuit Court of Appeals remanded Judge Robreno's 2018 order granting summary judgment so the Court could address "(1) whether [Saajida] Walton received [actual or constructive] notice of the action by December 17, 2015, and if so (2) whether Moore can demonstrate the absence of prejudice—the final element necessary to satisfy the relation back inquiry, and if so (3) the merits of Moore's Eighth Amendment claim." (Third Circuit Remand at 22, ECF No. 75.) The panel also clarified that "the District Court may exercise its discretion as to whether to permit additional discovery on the issue of notice." (*Id.* at 21.)

Exercising that discretion, the Court allowed three months of limited discovery on whether Moore had actual or constructive notice of the initial Complaint by December 17, 2015. (Sched. Order at 1, ECF No. 82.) When the parties couldn't meet that deadline, the Court extended it by two months. (Am. Sched. Order, ECF No. 84.) During these 150 days of discovery on a very narrow issue, Moore's counsel deposed five

1

individuals with the City of Philadelphia Law Department and Department of Prisons. The deponents were "unable to provide testimony as to whether communications or a relationship between Walton and the Law Department existed." (Resp. to Mot. to Quash at 11, ECF No. 91.) With discovery closing, Moore issued a last-minute, all-encompassing subpoena to the City Law Department, which the Court quashed. (ECF Nos. 95 & 96.)

The Court held a telephone conference with counsel for the parties on December 19, 2024 to discuss the case's next procedural steps. (ECF No. 98.) During that call, Moore's lawyers stated they would be filing a sanctions motion against the City Law Department. The Court was skeptical of the motion's motivations and advised counsel to think hard before filing it. Attorney Alan Yatvin nonetheless filed the Motion on February 4, 2025. (ECF No. 99.) Counsel should have heeded the Court's admonition.

*    *    *

Federal Rule of Civil Procedure 11 imposes an affirmative duty on attorneys to conduct a reasonable inquiry into factual contentions and denials of factual contentions before filing any document with the Court. *See* Fed. R. Civ. P. 11(b); *see also Bus. Guides, Inc. v. Chromatic Commc'ns Ents., Inc.*, 498 U.S. 533, 551 (1991). In deciding whether to impose Rule 11 sanctions, a court must determine whether the attorney's conduct was reasonable under the circumstances. *See Bus. Guides, Inc,* 498 U.S. at 551. Reasonableness is "objective knowledge or belief at the time of the filing of the challenged paper" that the claim is well-grounded in law and fact. *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (quotation omitted). "The reasonableness of counsel's conduct depends on several factors, including 'the amount of

time available to conduct the factual and legal investigation; the necessity for reliance on a client for the underlying factual information;' and 'the complexity of the legal and factual issues implicated.'" *Shelton v. Chaudhry*, 763 F. Supp. 3d 675, 683 (E.D. Pa. 2025) (quotation omitted).  Sanctions are only imposed in "exceptional circumstances where a claim or motion is patently unmeritorious or frivolous." *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (quotation omitted).

Moore claims Aaron Shotland and the City Law Department violated Rule 11(b)(4) by failing to conduct a "reasonable inquiry" into whether "the denials of factual contentions" in Moore's complaint were "warranted on the evidence or, if specifically so identified, [] reasonably based on belief or a lack of information."  (Mot. at 37–41.)  To be clear, Shotland *did* investigate Moore's allegations against Department of Prisons Commissioner Louis Giorla and Deputy Commissioner Claudette Martin.  Upon receiving the complaint, the City Law Department requested documents from the prison "so they could be reviewed and a response could be prepared to the complaint." (Shotland Depo. at 10:20–11:7, ECF No. 99-4.)  Instead, Yatvin rests on the assertion that Shotland was necessarily obligated under Rule 11's reasonable-inquiry requirement to speak to Giorla and Martin—who were dismissed from this case in December of 2015—before filing answers on their behalf.[1]  *See* (*id.*); (Sanctions H'rg Tr. at 29:8–9, 30:13–15); (Giorla Answer, ECF No. 9); (Martin Answer, ECF No. 29.)

---

[1]    Moore also claims Shotland's inquiry was unreasonable because he failed to assist in identifying and serving "CO Walden," whom we now know is Saajida Walton.  (Mot. at 38–41.)  That purported failure is not relevant to the City's factual investigation on behalf of Giorla and Martin. Even if it was, Moore has not explained why it was Shotland's responsibility to properly identify defendant Walton.  *See* Fed. R. Civ. P. 10(a) (requiring the plaintiff to "name all parties" in the caption of the complaint).  Further, because Walton was no longer a city employee when the Complaint was filed, *see Moore v. Walton*, 96 F.4th 616, 621 (3d Cir. 2024) (noting that Walton resigned on April 5, 2014), the City was not obligated to accept service on her behalf, *Williams v. Del. County Bd. of Prison Inspectors*, No. 17-4348, 2018 WL 5018455, at *3 n.19 (E.D. Pa. Oct. 15, 2018)

Yatvin points to no case law suggesting that a client interview is *per se* required by Rule 11's reasonable-inquiry requirement.[2]  (Sanctions H'rg Tr. at 20:10–20.)  At least one court has refused to impose a *per se* requirement that attorneys interview clients before making filings on their behalf.  *See Walden v. Enter. Servs. Grp., LLC*, No. 22-238, 2024 WL 1125072, at *2 (E.D. Ky. Mar. 14, 2024).  Some courts have required a client interview before responding to an interrogatory, *see, e.g.*, *EEOC v. Koch Meat Co.*, No. 91-4715, 1992 WL 332310, at *3 (N.D. Ill. Nov. 4, 1992) ("To properly respond to interrogatories, an attorney must interview his client."), which is exactly what Shotland said attorneys in the Law Department usually do, (Shotland Depo. at 34:8–12).  A *per se* rule that attorneys interview clients before filing an answer would be inappropriate because defense attorneys have limited time to conduct factual investigations, *see* Fed. R. Civ. P. 12(a)(1)(A)(i) (requiring answers to be filed within 21 days of service of the complaint), and can often admit or deny factual contentions based

---

("Mr. Williams cannot properly serve Mr. Hyman, Mr. Hellriegel, and Mr. Hitchens by serving their former employer or their former employer's authorized agent.").  *See also Nhira v. Bowie State Univ.*, No. 14-676, 2014 WL 6065998, at *2 (D. Md. Nov. 12, 2014) ("[T]here is no obligation on the part of an employer to forward summonses to former employees nor does an employer have the authority to accept service of process for former employees.").

[2]    Yatvin cites four cases, but none impose a bright-line client-interview requirement.  In *Rhinehart v. Stauffer*, 638 F.2d 1169, 1170–71 (9th Cir. 1979), the Ninth Circuit Court of Appeals affirmed the district court's dismissal order where *plaintiff's* counsel had not conducted any investigation into the case, including by speaking with his client, before "filing [the] civil action."  But "[d]enials of factual contentions [in an answer] involve somewhat different considerations" than making them for the first time in a complaint.  Fed. R. Civ. P. 11 1993 Advisory Committee Notes.  One example is the decreased necessity of speaking to a client.  In Yatvin's next case, *Wymer v. Lessin*, 109 F.R.D. 114, 116 (D.D.C. 1985), defense counsel failed to reasonably investigate their client's citizenship, which is a fact most easily identified via a client interview.  No *per se* rule is mentioned.  In *Rowland v. Fayed*, 115 F.R.D. 605 (D.D.C. 1987), the court does not even discuss counsel's failure to interview their clients.  And *Rowland's* citation of *Wymer* is irrelevant.  Finally, in *Viola Sportswear v. Mimun*, 574 F. Supp. 619 (E.D.N.Y. 1983), the court concluded that plaintiff had not conducted a reasonable inquiry because he never reviewed the complaint, the investigator's report, a relevant photograph, or anything else before filing the complaint.  No mention is made of a client interview.

on other sources of information without speaking to their clients, *see Shelton*, 763 F. Supp. 3d at 683 (noting that Rule 11 is concerned with objective reasonableness under the circumstances, including whether it is necessary to rely "on a client for the underlying factual information").

In lieu of a *per se* rule, Yatvin first cites paragraphs one, three, four, seven and nine of the answers.  (Sanctions H'rg Tr. at 6:10–11.)  He concedes that the bulk of each of these paragraphs are well-founded, such as "[t]he allegations in this paragraph are addressed to individuals other than the Answering Defendant [so] no further answer is required."  (Giorla Answer ¶1); (Martin Answer ¶1.)  Rather, Yatvin is offended by the following language: "To the extent a response is required, these allegations are denied." (*Id.*)  Shotland had no need to speak to his clients to assert these denials because he knew that neither of them were present during the alleged incident, (Shotland Depo. at 25:9–12), and that Moore's complaint would not "reach Commissioner Giorla," (Sanctions H'rg Tr. at 51:1–8).  Even if Shotland was unreasonable for making these (boilerplate) denials, because they came after true statements that no answer is even required, his conduct does not constitute the "exceptional circumstances" needed for imposing Rule 11 sanctions.

Yatvin next asks the Court to sanction Shotland for including affirmative defenses three, five, six and seven in the answers.  (*Id.* at 20–25.)  These defenses are, justifiably, almost always raised by City attorneys in cases such as this.  The third affirmative defense raised qualified immunity, (Giorla and Martin Answers at 4), the applicability of which is for the Court to decide, *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) ("The issue of qualified immunity is generally a question of law.").  The fifth

5

affirmative defense stated that the "plaintiff's claims are barred, in whole or in part, to the extent that he has failed to take reasonable measures to mitigate any or all damages." (Giorla and Martin Answers at 4.) Shotland's inquiry into this defense didn't need to include an interview with his clients, who were not present during the incident and would not have had knowledge of his mitigation efforts. In any event, the City clarified the defense would only apply *to the extent that* plaintiff failed to mitigate his damages. Similarly, the sixth affirmative defense claimed Moore's allegations are barred "*insofar as*" Giorla and Martin's actions did not proximately cause Moore's injury.[3] (*Id.*) Finally, the seventh affirmative defense claimed defendants "acted in a reasonable, proper, and lawful manner." (*Id.*) The Court fails to see how Shotland could possibly have violated Rule 11 by not interviewing his clients—who, again, weren't present—before making this statement. Nothing in either of the answers was remotely unreasonable, and certainly not so unreasonable as to constitute extraordinary circumstances.

Yatvin never should have filed this Motion, which he claims is "his first Rule 11 motion in 35 years litigating civil cases." (Reply at 9, ECF No. 102.) He certainly picked the wrong reasons for his first rodeo. The Motion was an attempt to exact a settlement from the City when all other avenues of obtaining relief seemingly eluded him. *See* Fed. R. Civ. P. 11 1993 Advisory Comm. Notes ("Rule 11 motions should not be made or threatened . . . to exact an unjust settlement"); (E-Mails from Yatvin to Law

---

[3]    Affirmative defenses "are generally waived if not specifically raised by responsive pleading or by appropriate motion." *Sterten v. Option One Morg. Corp.*, 546 F.3d 278, 283 (3d Cir. 2008). Given the short time for investigation and the potential for forfeiture, it is not objectively unreasonable for a defense attorney to raise an affirmative defense in an answer that, after an opportunity for discovery, is likely to apply or often does apply in similar cases.

Department, ECF Nos. 100-1, 100-2) (threatening to file a Rule 11 sanctions motion and a *Monell* lawsuit); (Reply at 9) ("Defense counsel concedes that Plaintiff's counsel's communications with the City of Philadelphia Law Department's litigation chair were for the purposes of seeking to avoid further and embarrassing litigation through settlement."); (Sanctions H'rg Tr. at 40:11–13) ("I was attempting to find a resolution that would not embarrass the city."); (*id.* at 48:6–12) (recounting that Yatvin told the City's attorney "I don't have to file the Rule 11 [motion].  We may be able to reach an appropriate [resolution].").  That is why his requested relief was preclusion of the statute of limitations defense that he was struggling to overcome after five months of discovery.  The Court would be well within its discretion to order Yatvin to pay Walton's attorney's fees under Rule 11(c)(2), but given the justifiable condemnation he absorbed from the Court during oral argument and his lengthy career at the bar, the Court opts against it.

BY THE COURT:

**/s/ Gerald J. Pappert**
Gerald J. Pappert, J.